## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SCHYLER GOODWIN,

      Plaintiff,

      v.

      Case No. 5:20-CV-4002-HLT-TJJ

DALE GOODWIN, LINDA GOODWIN, and
G S BANCSHARES, INC.,

      Defendants.

## ORDER

    This is an unfortunate dispute between family members about how a family business has been run. Plaintiff Schyler Goodwin is a minority shareholder in that business—a bank holding company, Defendant G S Bancshares. Defendants Dale and Linda Goodwin own a majority of the stock in G S Bancshares. Plaintiff alleges that Defendants Dale and Linda Goodwin—who control the Board of Directors for G S Bancshares—have breached their fiduciary duties and acted with negligence, hurting both Plaintiff individually and the corporation and stockholders generally through their actions. All three defendants move to dismiss. Docs. 15 and 17. Defendants Dale and Linda Goodwin argue that Plaintiff lacks standing to bring this action as a direct action; he must bring it as a derivative action.[1] Defendant G S Bancshares argues that Plaintiff fails to state a claim

---

[1]    "Standing" in the context of shareholder derivative actions is related to prudential standing (as opposed to constitutional standing). *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336-37 (1990). One prudential limit on standing requires that a party assert his or her own legal rights and interests—not those of third parties. *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975). Prudential standing is not jurisdictional. *VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1146 n.4 (10th Cir. 2017) (citation omitted). Until recently, the Tenth Circuit had declined to decide whether a motion to dismiss based on prudential standing is appropriately filed under Fed. R. Civ. P. 12(b)(1) or 12(b)(6). *Id.* ("Because VRA hasn't argued otherwise, we assume without deciding that it is appropriate to dismiss a complaint under Rule 12(b)(6), rather than Rule 12(b)(1), when the plaintiff lacks prudential standing."). But last year, the Tenth Circuit held that prudential standing is not to be considered under Rule 12(b)(1). *See Kerr v. Polis*, 930 F.3d 1190, 1194 (2019). Here, as noted below, Defendants Dale and Linda Goodwin move to dismiss under Rule 12(b)(6). The Court therefore considers the standing issues raised under the umbrella of Rule 12(b)(6) instead of Rule 12(b)(1), which is applied in challenges to constitutional standing.

against the corporation because he has not pleaded the elements of a derivative action. For the following reasons, the Court grants both motions. But the Court will hold the case open for fourteen days for Plaintiff to file a second amended complaint properly alleging a derivative action.

## I.     BACKGROUND

Most of the factual background of Plaintiff's verified complaint is unnecessary for resolution of the instant motions. Defendant G S Bancshares is a Subchapter S corporation that owns BankWest of Kansas in Goodland, Kansas. The corporation has either seven or eight shareholders. At a high level, Plaintiff is frustrated with how Defendants Dale and Linda Goodwin have controlled, governed, and managed G S Bancshares. Plaintiff alleges that it would be futile to make a demand on G S Bancshares because Defendants Dale and Linda Goodwin control the corporation. They have ignored corporate formalities and eliminated directors and advisors who oppose them. The corporation has failed to distribute dividends and owns assets that serve no apparent business purpose, such as Defendants Dale and Linda Goodwin's personal home, second home, vacation home, and approximately $400,000 in art and antiques.

## II.    STANDARD

A court will dismiss a cause of action pursuant to Rule 12(b)(6) under two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts must accept well-pleaded factual allegations as true,

this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id*. at 678-79.

## III.    ANALYSIS

Plaintiff's verified complaint is intentionally somewhat vague. Plaintiff attempts to structure his complaint to allow flexibility for whether the Court ultimately construes his cause of action as a direct action or as a derivative action. This is a matter of importance, as it involves Plaintiff's standing to bring his claims.

In Kansas, when a shareholder believes that a corporation's officers or directors have breached their fiduciary duties, the shareholder may file a derivative action. K.S.A. § 60-223a. Under more limited circumstances, the shareholder may file a direct action for damages personal to him. *Richards v. Bryan*, 879 P.2d 638, 646 (Kan. Ct. App. 1994). A derivative action is one that is brought by a shareholder for injuries to the corporation or to the shareholder but mediated through the corporation. *Id.* (citations omitted). A direct action is one where "the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Id.* (citations omitted). To determine which type of case the shareholder has standing to bring, courts look at the nature of the alleged wrong and the potential relief. *Id.* (citation omitted).

Even if a court determines the appropriate type of action to be a derivative action, the court may still have discretion to allow the case to proceed as a direct action if the corporation involved is a close corporation. In allegations of mismanagement of close corporations, the primary beneficiaries of any recovery are likely the alleged wrongdoers. They are often the majority shareholders. Given this undesirable result, Kansas appellate courts have allowed courts the

discretion to treat actions raising derivative claims as direct actions based on findings that doing so will not "(1) unfairly expose the corporation to a multiplicity of actions; (2) materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons."[2] *Id.* at 648.

Any argument by Plaintiff that he has pleaded a direct action without the aid of the *Richards* exception lacks conviction.[3] Instead, the thrust of Plaintiff's argument is that the *Richards* exception may apply here, allowing the Court to treat the case as a direct action. Alternatively, Plaintiff argues, he has adequately pleaded a derivative action on behalf of G S Bancshares. G S Bancshares therefore must remain in the case as a defendant—at least until the Court determines whether to let Plaintiff proceed directly or derivatively. Stated differently, Plaintiff asks this Court to adopt a "wait-and-see" approach and determine later, on a more complete record, whether he brings direct or derivative claims.

---

[2]    No party challenges whether *Richards* is binding on this Court. This Court is bound to follow the law of the Kansas Supreme Court on issues of state law in a diversity case. *Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008) (citation omitted). But the Kansas Supreme Court has not explicitly adopted the *Richards* test. *See Mynatt v. Collis*, 57 P.3d 513, 527, 530 (Kan. 2002) (declining whether to decide *Richards* should be overruled, but holding that the Court of Appeals did not abuse its discretion in rejecting a direct action). *But see Lightner v. Lightner*, 266 P.3d 539, 547 (Kan. Ct. App. 2011) (characterizing *Mynatt* as "embracing" the analysis in *Richards*). And there are legitimate questions about whether the Kansas Supreme Court would follow *Richards*. *See Brown v. Mailman*, 1996 WL 42229, at *2-*3 (D. Kan. 1996). At a minimum, there are policy grounds that weigh both for and against its holding. Nevertheless, it is unnecessary for this Court to reach the question under the facts pleaded in this case and the arguments advanced by the parties.

[3]    Plaintiff directs the Court to three sets of paragraphs in his complaint that are allegedly unique to him—which <u>might</u> independently support a direct action without the aid of *Richards*: paragraphs 20, 37-38, and 44-45. Paragraph 20 alleges that Plaintiff was excluded from discussions that should have included all stockholders. Paragraphs 37-38 allege that Plaintiff should have received $107,652.70 in dividends over six years, but he received none. And paragraphs 44-45 allege that Plaintiff raised concerns at stockholder meetings, but his request to include his concerns in the minutes was denied. These three isolated allegations are insufficient for the Court to find Plaintiff has standing to pursue this case as a direct action. Plaintiff has tied no individual damages to the first and third set of allegations. And although the loss of dividends may have been unique to Plaintiff, *Richards* itself suggests that this allegation is insufficient to state a direct claim because failure to pay dividends was one of the plaintiff's complaints involved when the Kansas Court of Appeals created the *Richards* exception. 879 P.2d at 646.

Kansas law appears to permit this "wait-and-see" approach, at least in cases involving close corporations. *See, e.g.*, *Idstrom v. All. Radiology, P.A.*, 2017 WL 129926, at *3 (Kan. Ct. App. 2017) (after jury verdict); *Lightner v. Lightner*, 266 P.3d 539, 544-45 (Kan. Ct. App. 2011) (after bench trial); *Litton v. Maverick Paper Co.*, 388 F. Supp. 2d 1261, 1267 (D. Kan. 2005) (on motion for summary judgment); *Downs v. Brasted*, 1995 WL 645447, at *1 (D. Kan. 1995) (on motion for summary judgment). But Plaintiff has not pleaded facts that would support doing so in this case.

Most significantly, Plaintiff admits that there are at least four other shareholders who are not parties to this action. This admission conflicts with Plaintiff's unsupported, bare allegations that "allowing plaintiff to prosecute his claims as a direct action will not (1) unfairly expose the Corporation to a multiplicity of actions; . . . or (3) interfere with a fair distribution of the recovery among all interested persons." Doc. 11 at 6 ¶ 46. To the contrary, it seems that the existence of additional shareholders not a party to this action may <u>both</u> subject the corporation to multiple actions <u>and</u> make fair distribution of recovery difficult. Either of these occurrences would make the *Richards* exception inapplicable.

Plaintiff argues that the existence of additional minority shareholders does not mean he fails the *Richards* test. In support, Plaintiff cites three cases with multiple shareholders, some of whom did not participate in the action. *Idstrom*, 2017 WL 129926, at *5 (acknowledging other minority shareholders who were not in the action but allowing *Richards* claim to proceed); *Smith v. Roger Smith & Sons, Inc.*, 2012 WL 2148173, at *1-*2, *6 (Kan. Ct. App. 2013) (allowing a direct claim to proceed even though one of three shareholders had been dismissed); *Litton*, 388 F. Supp. 2d at 1268-69, 1271-73, 1296-97 (allowing plaintiffs to pursue a direct claim but mentioning

elsewhere multiple other shareholders who were not parties). But each case is distinguishable and does not resolve the Court's concerns in this case.

Specifically, as to distinguishing the cited cases, in *Idstrom*, the court noted that the other shareholders were not interested in joining the suit and the statute of limitations had expired. 2017 WL 129926, at *5. In *Smith*, the third shareholder had died, but he was also an alleged wrongdoer, so the court noted that he would not have sued or been able to recover, in any event. 2012 WL 2148173, at *5-*6. And in *Litton*, the *Richards* holding was an alternative one. Before getting to *Richards*, the court first held that "[i]t appears that at least some of plaintiffs' claims—particularly with regard to termination of their employment—involve a distinct and disproportionate injury to them and/or a contractual right which exists independently of any right of the corporation." *Litton*, 388 F. Supp. 2d at 1297. This finding made a direct action independently appropriate without resorting to use of *Richards*.

Even if not distinguishable, the cited cases do not resolve the Court's specific concerns in this case. First, Plaintiff does not delineate between claims. While it is possible that he could demonstrate individual harm for some of his claims (i.e., retaliation against him for questioning financial practices), many of Plaintiff's allegations of specific bad acts have resulted in corporate harm (i.e., allegations that the corporation spent $1 million to improve Defendants Dale and Linda Goodwin's residence or that Defendants Dale and Linda Goodwin refused to invest capital). On balance, the true nature of Plaintiff's claims is heavily weighted toward claims that caused harm to the corporation. But Plaintiff lumps all the complained-of conduct together as breach of fiduciary duty claims and negligence claims. This makes it difficult to discern how Plaintiff seeks to proceed on his theories. He wants to Court to wait and siphon out the direct claims from the derivative claims after discovery, but the Court believes this would be futile—again largely

because of the existence of additional minority shareholders whose interests could be prejudiced by this action. Second, allowing Plaintiff to proceed with a direct action here could lead to conflicting results. If one of the unnamed minority shareholders brought another suit, he or she could assign the antiques and art another value or the houses and home improvements another value. This could lead to conflicting results (just as, more obviously, different juries could reach various conclusions on liability). Thus, based largely on the existence of additional minority shareholders, the Court holds that Plaintiff has not adequately alleged that the *Richards* exception applies.[4] The Court therefore dismisses his direct-action claims without prejudice. Plaintiff may seek leave to amend if he is subsequently able to allege standing.

Having held that Plaintiff cannot pursue his claims directly, the Court next turns to whether Plaintiff has adequately pleaded a derivative action. Perhaps because Plaintiff would <u>prefer</u> to pursue a direct action and collect a personal recovery, Plaintiff's derivative allegations are loose and unclear. Plaintiff named G S Bancshares as a defendant but does not make clear that it is named as a nominal defendant. And Plaintiff brought this action in his own name only—not on behalf of the corporation.[5] Importantly, Plaintiff does not claim that he is seeking to enforce a right of G S Bancshares or that he will "fairly and adequately represent the interests of shareholders or

---

[4]   Even if Plaintiff had sufficiently alleged the *Richards* factors, the Court questions whether an exercise of discretion is warranted. For one reason, the *Richards* exception was founded largely on the rationale of addressing fraud. The Kansas appellate court noted that "directors have the power to control and direct the affairs of the corporation, and in the absence of fraud, courts will generally not interfere on behalf of a dissatisfied stockholder with the discretion of the directors . . . ." *Richards*, 879 P.2d at 648 (quoting *Sampson v. Hunt*, 665 P.2d 743, 755 (Kan. 1983)). And the court noted that in situations of minority shareholder freeze-out, because the underlying complaint "is the failure of the close corporation to fulfill the shareholder's reasonable expectations, such actions necessarily involve at least one claim of fraud." *Id.* Although Plaintiff alleges much wrongdoing by Defendants Dale and Linda Goodwin, he does not allege fraud.

[5]   Plaintiff has at least implicitly through specific Rule 23.1 allegations suggested his intent to bring a derivative action. His complaint is verified, and he alleges that (1) he was a shareholder, (2) the action is not collusive and (3) efforts to make a demand on the board would be futile, and why. Doc. 11 at 2 ¶ 9; 7 ¶ 47; 2-3 ¶¶ 5, 11-16. He further alleges that the corporation has suffered damages, but he is much more specific about his own damages. *Compare id.* at 7 ¶ 51; 8 ¶ 55 *with id.* at 5 ¶ 37.

members who are similarly situated." Fed. R. Civ. P. 23.1(a). To the contrary, Plaintiff seeks to recover damages for himself—which would necessarily be against the interests of the other, non-participating, minority shareholders.

Rule 23.1 does not require pleading to the level of that required for fraud, but it does require a basic level of factual allegations to plausibly state a claim. That basic level is not present here. It is possible that with additional, more specific and clear allegations, Plaintiff could meet that burden. Thus far, Plaintiff elected to keep his allegations more generic so that the Court would allow him to proceed directly instead of derivatively. This was a conscious choice by Plaintiff—one that did not work out in his favor. That said, because the Court believes that it is possible that Plaintiff <u>could</u> assert derivative claims if committed to doing so, the Court dismisses the derivative claims without prejudice[6] but grants Plaintiff a limited amount of time to amend his complaint to state a derivative cause of action. This leave is <u>limited in time and scope</u>. Plaintiff must amend his complaint within fourteen days, and he may only amend to properly frame his complaint as a derivative action on behalf of G S Bancshares. To be clear, this leave does not include expanding the scope of his claims. If Plaintiff fails to file a second amended complaint within fourteen days that complies with the Court's directive, the Court will close this case based on the instant order.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendants Dale Goodwin and Linda Goodwin's Motion to Dismiss (Doc. 15) is GRANTED. Plaintiff's individual, direct-action claims are dismissed without prejudice.

---

[6]    The Court recognizes that Defendants Dale and Linda Goodwin did not ask for dismissal of the derivative claims. But Defendant G S Bancshares's rationale for dismissal applies to the claims as a whole. And Defendant G S Bancshares is a necessary party to a derivative action on its behalf. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). Without G S Bancshares present as a nominal party, Plaintiff cannot pursue claims on its behalf against Defendants Dale and Linda Goodwin. The Court therefore dismisses the derivative claims in their entirety.

THE COURT FURTHER ORDERS that Defendant G S Bancshares, Inc.'s Motion to Dismiss (Doc. 17) is GRANTED. Plaintiff's derivative claims are also dismissed without prejudice.

THE COURT FURTHER ORDERS that Plaintiff may file a second amended complaint within fourteen days identifying only derivative claims. If Plaintiff fails to do so, the Court will close the case on this order.

IT IS SO ORDERED.


Dated: May 27, 2020                        /s/ *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE